UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

APOLLO JOHNSON,

        Plaintiff,        Case No. 2:12-cv-365

v.        Honorable Gordon J. Quist

MICHAEL MARTIN, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. On October 9, 2012, this Court ordered service of Plaintiff's complaint on Defendants Michael Martin and James Bolton. On May 7, 2013, Defendants filed a motion for summary judgment (docket #17) on the ground that Plaintiff failed to exhaust his available administrative remedies against Defendant Martin on the claim that Plaintiff was denied Jewish reading material. Defendants also assert that they are entitled to summary judgment on the merits with regard to Plaintiff's remaining claims. The time for filing a response has passed. Upon review, I recommend that Defendants' motion for summary judgment be granted as to Defendant Bolton and denied as to Defendant Martin.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Chippewa Correctional Facility (URF). In his *pro se* complaint, he alleges that on September 9, 2009, he received confirmation that his father was Jewish. Plaintiff then began to study the laws of Orthodox Judaism and requested that his designated religion be Judaism. On October 9, 2009, and October 13, 2009, Plaintiff received a memorandum while detained at the St. Louis Correctional Facility (SLF) from the Chaplain there acknowledging Plaintiff's request. On February 25, 2010, Plaintiff was transferred to Oaks Correctional Facility (ECF), which prevented him from being interviewed for the Kosher meal program. On April 19, 2010, Plaintiff sent a request to the ECF Chaplain, asking to be interviewed for the Kosher diet program, to no avail. On October 20, 2010, Plaintiff was transferred back to SLF, but was unable to complete the Kosher meal interview. On December 14, 2010, Plaintiff was transferred to the Marquette Branch Prison (MBP), and was still not allowed to interview for the Kosher meal program.

On January 10, 2011, Plaintiff was transferred to URF. On September 8, 2011, Plaintiff submitted a Declaration of Religious Preference to identify his religion as Judaism. On September 28, 2011, Plaintiff was finally interviewed for the Kosher meal program. On December 4, 2011, Plaintiff sent correspondence to the Grievance Coordinator, asking who he should direct the

grievance to if he was denied a Kosher diet. On December 20, 2011, Plaintiff's request for a Kosher diet was denied. On January 6, 2012, Plaintiff requested educational material on the Jewish religion from Defendant Bolton, to no avail. On February 9, 2012, Plaintiff sent an "epistle" to Defendant Bolton, asserting that he was being discriminated against by the denial of Jewish reading material while in segregation. On April 4, 2012, Plaintiff again wrote to Defendant Bolton requesting a Torah, to no avail.

Plaintiff claims that Defendants violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

Initially, Defendants claim that Defendant Martin is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The

Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

In support of this assertion, Defendants offer a copy of grievance URF 1203 0796 20C, which was filed by Plaintiff on March 5, 2012, and complained that Plaintiff was denied Jewish reading material. Plaintiff appealed the denial of this grievance to step III. *See* Defendants' Exhibit 1, docket #18-2. A review of the record on this grievance reveals that Defendants are correct. Defendant Martin is not named in the grievance on this issue. Therefore, Defendant Martin is entitled to summary judgment for failure to exhaust administrative remedies on Plaintiff's claim regarding the denial of reading materials.

Defendants state that they are entitled to summary judgment on Plaintiff's First Amendment claims. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive

alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Defendants have taken Plaintiff's deposition and attach his testimony in support of their motion for summary judgment. In his deposition, Plaintiff testified that he has never met or talked to Defendant Martin, and that the only contact he has had with Defendant Martin was in the context of a kite asking why he had been denied a Kosher diet. *See* Defendant's Exhibit 3, pp. 21-22. Plaintiff testified that he requested a Kosher diet at SLF, ECF, and URF. Plaintiff's request for a Kosher diet was denied once while at URF. As of the date of Plaintiff's deposition, he had not made a second request for a Kosher diet because it had not yet been a year. *Id*. at p. 36. Defendants note that MDOC Policy Directive 05.03.150 ¶ SS requires that after a denial, a prisoner must wait 12 months before reapplying for a Kosher diet. Defendants also note that Plaintiff waited nine months after his transfer to URF to request a Kosher diet. *See* Plaintiff's complaint, ¶¶ 12-13.

Defendants attach a printout of Plaintiff's major misconduct history, which shows that since he began studying Judaism in 2009, he received 60 major misconduct violations. *See* Defendants' Exhibit 8. Defendants note that this amounts to an average of 1.39 misconducts per month since October 13, 2009. Since Plaintiff only had 44 major misconduct violations in the seven years prior to his study of Judaism, for an average of .52 per month, Defendants assert that his behavior has gotten worse, not better.

Finally, Defendants note that Plaintiff testified in his deposition that he is suing Defendant Bolton for the failure to provide him with Jewish reading material and is suing Defendant

8

Martin for the denial of a Kosher diet. Exhibit 3, p. 32. In his deposition, Plaintiff conceded that he had borrowed a Torah from the URF library to read. *Id.* at pp. 13-14.

With regard to Plaintiff's First Amendment claim against Defendant Bolton, Defendants state that prisoners wishing to read religious materials have three avenues for acquiring such materials. Prisoners may check religious books and materials out of the prison library to read, order their own reading material from approved vendors, or wait for reading materials to be donated from outside religious organizations. In his deposition, Plaintiff admitted that he had a prisoner account, but indicated that he did not have a prison job and owed restitution, so he did not have any money to purchase religious materials. *Id.* at pp. 11-13. Plaintiff also testified that he had written religious clergy members, but was not aware that he could have visits from religious clergy or that he could telephone clergy. Plaintiff states that he never received mail from religious clergy.

As noted above, Plaintiff's complaint asserts that he wished to have access to the "Torah, etc." Plaintiff testified that he has been able to borrow a copy of the Torah from the URF library to read. *Id.* at pp. 13-14. In addition, Plaintiff testified in his deposition that he personally owned religious books on Jewish dietary law and Jewish literature. Plaintiff states that they were given to him by another Jewish prisoner. *Id.* at pp. 35-36. There is no indication that Plaintiff made any requests for specified items other than the Torah. Nor does Plaintiff explain why he required "etc." to practice his religious beliefs. Therefore, the evidence does not support a finding that Defendant Bolton's behavior infringed upon Plaintiff's practice or belief. Accordingly, the undersigned recommends that the court grant summary judgment to Defendant Bolton on Plaintiff's First Amendment claim.

With regard to Plaintiff's claim that Defendant Martin violated the First Amendment when he denied Plaintiff's request for a Kosher diet, Defendants assert that Plaintiff never requested a Kosher diet during the eight years and four months prior to his arrival at URF. However, Defendants fail to offer any evidence in support of this assertion and, as noted above, Plaintiff testified in his deposition that he requested a Kosher diet at SLF, ECF, and URF. *Id.* at p. 36. Defendants correctly note that Plaintiff was incarcerated at URF for nine months before he requested a Kosher diet and appear to argue that Plaintiff's criminal history and numerous misconducts disqualify him from having sincere religious beliefs. Defendants state that Plaintiff's misconducts include substance abuse (042), sexual misconduct (055), indecent exposure (057), assault and battery against staff (008), threatening behavior (012), insolence and profanity (426), and disobeying of direct orders (420). *See* Defendants' Exhibit 8 and MDOC Policy Directive 03.03.105, Attachments A, B, and C. Defendants note that Plaintiff has failed to make any attempt to request a Kosher menu/diet for the past 17 months, although he could have done so as early as five months ago. Finally, Defendants assert that Plaintiff's father was not Jewish, as he claims, and that if necessary "this will be proven at trial."

In the opinion of the undersigned, Defendants' contentions with regard to the denial of a Kosher diet are insufficient to show that they are entitled to summary judgment. The evidence offered by Defendants supports a finding that Plaintiff is a hardened criminal who has behavior problems and has accrued numerous misconducts while in prison. In addition, it is apparent that Plaintiff has not been entirely diligent in pursuing his quest for a Kosher diet. However, these facts do not necessarily mean that Plaintiff's desire for a Kosher diet is not based on a sincere religious

belief. Therefore, the undersigned concludes that Defendant Martin is not entitled to summary judgment on Plaintiff's First Amendment Kosher diet claim.

Plaintiff seeks compensatory damages for "emotional and irreparable injuries" sustained as a result of the denial of a Kosher diet. Defendants claim that Plaintiff is barred from such relief because he has no "physical injury" as required by 42 U.S.C. § 1997e(e). Section § 1997e(e) provides as follows:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*Id.*

Of course, if 42 U.S.C. § 1997e(e) applied to claims under the First Amendment, a prisoner would almost never be able to assert these claims because it would be the very rare case where a prisoner would suffer a physical injury when asserting a First Amendment freedom of religion right claim. The Sixth Circuit repeatedly has held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. *See, e.g.*, *Jackson v. Herrington*, 493 F. App'x 348, 354 (6th Cir. 2010); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010); *Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at *2 (6th Cir. May 7, 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Robinson v. Corrections Corp. of America*, No. 99-5741, 2001 WL 857204, at *1 (6th Cir. June 20, 2001); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *2 (6th Cir. June 7, 2001); *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 (6th Cir. Sept. 2000); *Raines-Bey v. Garber*, No. 99-1471, 2000 WL 658721, at *1 (6th Cir. May 12, 2000). The Second and Fifth Circuits also have found that § 1997e(e) applies to constitutional claims. *See Thompson*

*v. Carter*, 284 F.3d 411 (2d Cir. 2002) ("Because the words 'federal civil action' are not qualified, they include federal civil actions brought to vindicate constitutional rights."); *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001) (applying § 1997e(e) to constitutional claims, including First Amendment religion claims); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

However, some federal courts have rejected the physical injury requirement of § 1997e(e) when the underlying claim is for a violation of the First Amendment or other right not typically involving physical injury. As the Ninth Circuit held in *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998), "[t]he deprivation of First Amendment rights entitles a plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." 143 F.3d at 1213. *See also Williams*, 2000 WL 1434459 (PLRA does not cover First Amendment retaliation claim); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (no requirement of physical, mental or emotional injury for First Amendment claim because deprivation of First Amendment rights standing alone is a cognizable injury); *Amaker v. Haponik*, 1999 WL 76798, at *7 (S.D.N.Y.) (§ 1997e(e) did not bar plaintiff's First Amendment claims); *Mason v. Schriro*, 45 F.Supp.2d 709, 720 (W.D. Mo.1999) (§ 1997e(e) does not apply to Equal Protection claims under the Fourteenth Amendment); *Lewis v. Sheahan*, 35 F.Supp.2d 633, 637 n. 3 (N.D. Ill.1999) (§ 1997e(e) does not bar a right of access claim); *Friedland v. Fauver*, 6 F.Supp.2d 292 (D.N.J. 1998) (§ 1997e(e) did not bar claim for unconstitutional incarceration following arrest without probable cause); *Warburton v. Underwood*, 2 F.Supp.2d 306, 315 (W.D.N.Y. 1998) (declining to dismiss Establishment Clause claim under § 1997e(e) for want of plaintiff's showing of physical injury

because "such claims nevertheless deserve to be heard").[1] In the opinion of the undersigned, there is no physical injury requirement necessary to assert a First Amendment claim.

Defendants state that they are entitled to summary judgment on Plaintiff's RLUIPA claims. The RLUIPA statute provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 131 S. Ct. 1651 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").

In *Colvin v. Caruso*, 605 F.3d 282, 295 (6th Cir. 2010), the Sixth Circuit held that the district court erred in denying the plaintiff's motion to amend to include claims that he was wrongfully removed from the Kosher meal program and was wrongly denied reinstatement. The case for the first time held that Michigan's use of a test to determine whether an inmate knows

---

[1] In contrast, the Seventh Circuit squarely has held that § 1997e(e) bars compensatory damages in First Amendment cases with no physical injury, though it does not bar nominal or punitive damages. *See Allah v. Hafeez*, 226 F.3d 237 (7th Cir. 2000).

13

enough about his religion was improper because it was based on an improper constitutional standard. *Id.* at 298. The court further suggested that the prison's policy of terminating a religious meal program based on a one-time possession of a non-Kosher item may be unreasonable under the First Amendment and RLUIPA. *Id.* at 296-97. The court found, however, that the plaintiff's allegations that he was deprived of Kosher meals for a short period and occasionally thereafter failed to state a claim as it involved mere negligence. *Id.* at 293.

In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical.'").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of

his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable").

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761. In the opinion of the undersigned, Defendant Bolton's failure to provide Plaintiff with religious reading material did not impose a substantial burden on Plaintiff's religious exercise. However, there is a genuine issue of material fact regarding whether the denial of a Kosher diet imposed such a burden. Therefore, with regard to Plaintiff's RLUIPA claims, the undersigned recommends granting summary judgment as to Defendant Bolton and denying summary judgment as to Defendant Martin.[2]

---

[2] Although Plaintiff may not seek damages pursuant to RLUIPA, he may be entitled to declaratory or injunctive relief.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[3] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Finally, Defendants state that to the extent that Plaintiff is asserting a substantive due process claim, such a claim is properly dismissed because it is subsumed by the First Amendment claims. The undersigned notes that in *Albright v. Oliver*, 510 U.S. 266, 271 (1994), a plurality of the United States Supreme Court held that the substantive component of the Due Process Clause may not serve as the basis for a § 1983 malicious prosecution claim. *Id*. The Court went on to state that where a particular Amendment "provides an explicit textual source of constitutional protection"

---

[3] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Id.* at 273 (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, Plaintiff's substantive due process claims are properly dismissed.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #17) be denied as to Defendant Martin and granted as to Defendant Bolton.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 14, 2014

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).